UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § § | CRIMINAL NO. 18-CR-199-S-2 |
| NADAL DIYA | § | |

## **PLEA AGREEMENT**

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Arthur R. Jones and Alamdar S. Hamdani, Assistant United States Attorneys, and the defendant, Nadal Diya ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### **Defendant's Agreement**

1. Defendant agrees to plead guilty to Count Nine of the First Superseding Indictment. Count Nine charges Defendant with Fraud and Misuse of Visas, Permits and Other Documents, in violation of Title 18, United States Code, Section 1546(a). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### **Punishment Range**

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1546(a), is imprisonment of not more than ten years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised

release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, and fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to the following: (1) violations involving fraud and misuse of visas, permits, and other documents, such as fraudulently obtained passports; (2) violations involving attempts by other co-defendants to obstruct justice; and (3) violations involving the export and attempted export of goods overseas. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

3

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

## Waiver of Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or

4

sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

10. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Nine of the First Superseding Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts pending against him in the First Superseding Indictment, as well as any subsequent superseding indictments pending against him, at the time of sentencing; and

(b) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant

5

timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

## Agreement Binding - Southern District of Texas Only

11. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the First Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

>(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

>(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count Nine of the First Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

   a. The defendant is a businessman of Syrian and Palestinian origin born in Homs, Syria on July 18, 1972, and is a citizen and national of Syria. For most of his life, the Defendant has been a resident of the United Arab Emirates (U.A.E.). The defendant has never been a citizen or national of Guatemala.

   b. From May 13, 2014 to June 20, 2014, the defendant paid co-defendant Labib Arafat, a business associate, seventy thousand dollars ($70,000.00) to obtain a Guatemalan passport, understanding that Arafat would obtain the passport through illegitimate means. The checks are listed below:

      i. A check in the amount of $40,000.00 dated May 13, 2014;

      ii. A check in the amount of $2,000.00 dated June 3, 2014; and

      iii. A check in the amount of $28,000.00 dated June 20, 2014, containing the notation "Final payment."

   c. A few weeks before the first payment, on or about April 21, 2014, Arafat emailed the defendant a photocopy of what appeared to be a Guatemalan passport in the defendant's name.

d. On or about July 19, 2014, while traveling in the United States on a valid Syrian travel document and a valid United States tourist visa, the defendant possessed and used the fraudulently-obtained Guatemalan passport in Houston, Texas when he opened a Bank of America account in Houston. Arafat was present with the defendant when he provided the passport to Bank of America employees as his identification in order to open this account. This passport listed the defendant's nationality as "Guatemalteca," which is Spanish for "Guatemalan." This statement about the defendant's nationality was false and the defendant also knew this statement to be false when he possessed and used this passport.

e. On or about September 10, 2014, the defendant attempted to have officials at the Guatemalan Consulate in Houston, Texas stamp the fraudulent passport with a Guatemalan government seal to make it appear authentic. Consulate staff suspected the passport might be fraudulent and confiscated it for further investigation.

f. Officials from the Guatemalan Consulate then contacted the Guatemalan Government Ministry of Immigration who told them that the defendant's Guatemalan passport was fraudulent. According to Guatemalan records, the passport number listed on the defendant's purported Guatemalan passport belonged to another individual who was a Guatemalan citizen.

g. At all times relevant to the First Superseding Indictment, the defendant understood that his Guatemalan passport had not been obtained through legitimate Guatemalan

9

government channels, and that it had been falsely made and/or fraudulently obtained.

h. On September 17, 2014, the defendant departed the United States and returned to the U.A.E. in order to renew his United States visa. United States officials denied defendant's visa application, which denied the defendant the ability to legally travel to the United States.

i. After the defendant arrived in U.A.E., he realized that his visa to come back to the United States had been denied. Through a friend, Diya met co-defendant Leatrice Malika De Bruhl-Daniels ("De Bruhl"). At the time De Bruhl was a Special Agent with the United States Naval Criminal Investigative Service ("NCIS") and stationed in Dubai, U.A.E.

j. The defendant sought information about his visa status from De Bruhl, looking specifically for information about why he could not obtain a United States visa. He first met her at his home in Dubai, U.A.E. on or about May 2016, where she explained that she could help him if he helped her and her government. He understood that she worked for the United States government.

k. De Bruhl then met with Diya on several occasions, whether privately at her house, at parties and social gatherings, or in local restaurants. When they met privately at her home, she would take his and her phones and place them in another room explaining they could be monitored.

l. Over the course of several months, De Bruhl would inform Diya that she was looking into his visa issues, and at the same time sought and received things of

10

value personally. For example, on De Bruhl's request, Diya hosted and paid for catering and bartending for De Bruhl's birthday party in Dubai, U.A.E. on or about March 30, 2017. He also gave her approximately $1,400.00 as a cash loan on or about July 14, 2017 in Dubai, U.A.E. And on De Bruhl's request, he provided employment to defendant's adult son from on or about December 31, 2017 to March 21, 2018 in Abu Dhabi, U.A.E. Finally, Diya gave De Bruhl a gold bracelet and paid for her to receive a massage prior to her departure from Dubai on or about April 20, 2018,

m. Prior to December 18, 2017, De Bruhl provided information to Diya about pending United States law enforcement investigations into him, including that he was the target of an FBI counterterrorism investigation. In addition, she revealed to Diya that Arafat was also under investigation, warned Diya that if he came to the United States he would be arrested, and that his phones were likely being monitored.

n. Also, on or about July 2017, De Bruhl's relationship with the defendant became sexual.

o. On December 18, 2017, a team of agents and a federal prosecutor from Houston met with De Bruhl about Diya with plans to interview Diya on December 19, 2017, under the ruse that they were there to collect information to assist with his visa. After De Bruhl left the Dubai Consulate that night, and unbeknownst to the Houston team who had just interviewed her, she met with Diya at his home, providing him with details about her own interview earlier that day by some of those same federal agents, instructions on what to bring to his interview and how to respond to

11

questions, and an admonition to not mention to investigators that he knew her or that they had any type of relationship

p. In July 2018, after being placed on unpaid administrative leave for the above actions, De Bruhl traveled to Dubai and tried to reach out to defendant delivering a card with a note, through an intermediary ("because [she was] not supposed to contact" the defendant), while the defendant was out of town. De Bruhl's card began by asking the defendant to keep the information in the card and note to himself, and then asked the defendant to "help me like I helped you." She further explained "that's what true friends do," and that she had "a resume ready and available." She implored the defendant to "do the right things for a friend," explaining that she had "lost everything for" him. She then asked if they could meet and discuss the above before she left Dubai. That meeting ultimately did not take place.

**Breach of Plea Agreement**

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Restitution, Forfeiture, and Fines – Generally

17. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

13

**Fines**

21. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

28. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on _March 9_, 2020.

_____
Nadal Diya
Defendant

Subscribed and sworn to before me on _3/9/2020_, 2020.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____
Alamdar S. Hamdani
Assistant United States Attorney
Southern District of Texas
Telephone: 713 567 9305

_____
~~Kent A. Schaffer~~ James Kennedy
Attorney for Defendant

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CRIMINAL NO. 18-CR-199-S-2 |
| | § | |
| NADAL DIYA | § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     3.9.2020
Kent A. Schaffer                    Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     3.9.2020
Nadal Diya                          Date
Defendant

16